**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

KENNETH WARD,

                           Plaintiff,

    v.                                               No. 06-CV-1429
                                                   (DNH/DRH)

GLENN GOORD, Commissioner; LUCIEN LeCLAIRE,
JR., Deputy Commissioner of Facility Operations; R.
WOODS, Superintendent, Upstate Correctional
Facility; C. GREGORY, Grievance Program
Supervisor; and THOMAS G. EAGEN, Director of
Central Office Review Committee (CORC),

                           Defendants.

---

**APPEARANCES:**                                       **OF COUNSEL:**

KENNETH WARD
Plaintiff Pro Se
338 Bennington Drive
Rochester, New York 14616

HON. ANDREW M. CUOMO                    ADRIENNE J. KERWIN, ESQ.
Attorney General for the                          Assistant Attorney General
   State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

  Plaintiff pro se Kenneth Ward ("Ward"), formerly an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, five DOCS employees, violated his constitutional

---

     [1]This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

rights under the First, Eighth, and Fourteenth Amendments. Compl. (Docket No. 1). Presently pending is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. Docket No. 35. Ward failed to respond to the motion. For the following reasons, it is recommended that defendants' motion be granted.

## I. Background

### A. Failure to Respond

Ward did not oppose defendants' motion.[2] "Summary judgment should not be entered by default against a pro se plaintiff who has not been given any notice that failure to respond will be deemed a default." Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996). Defendants provided such notice in the attachment to their Notice of Motion here. Docket No. 35. Despite this notice, Ward failed to respond.

"The fact that there has been no response to a summary judgment motion does not. . . mean that the motion is to be granted automatically." Champion, 76 F.3d at 436. Even in the absence of a response, defendants are entitled to summary judgment only if the material facts demonstrate their entitlement to judgment as a matter of law. Id.; Fed. R. Civ. P. 56(c). Because Ward has not responded to raise any question of material fact, the facts as set forth in defendants' Statement Pursuant to Rule 7.1(a)(3) (statement of material

---

[2]Defendants' motion was filed on March 26, 2008. Docket No. 35. At that time, Ward's motion to compel discovery was pending decision. See Docket No. 31. An order was then entered extending the deadline for Ward to respond to defendants' motion without date pending decision on his motion to compel. Docket No. 37. Ward's motion to compel was denied in an order filed August 14, 2008. Docket No. 39. That same order set September 15, 2008 as the deadline for Ward to respond to the instant motion. Id, Ward has filed no response.

facts not in dispute) (Docket No. 35-6) [hereinafter "Defs. Statement"] are accepted as true. Adirondack Cycle & Marine, Inc. v. American Honda Motor Co., No. 00-CV-1619, 2002 WL 449757, at *1 (N.D.N.Y. Mar. 18, 2002) (McAvoy, J.) (citing Lopez v. Reynolds, 998 F. Supp. 252, 256 (W.D.N.Y. 1997)).

## B. Statement of Facts

Prior to March 9, 2006, Ward was incarcerated at Gowanda Correctional Facility ("Gowanda"). Defs. Statement ¶ 7. On March 9, 2006, Ward left Gowanda in a transfer to Upstate Correctional Facility ("Upstate"). Id. ¶ 8. While at Gowanda, Ward received a kosher breakfast.[3] Id. Em route to Upstate, DOCS briefly placed Ward at Wende Correctional Facility ("Wende") in a transit area. Id. ¶¶ 10, 12. While there, Ward did not receive a kosher lunch. Id. ¶ 11. Ward was then transported to Auburn Correctional Facility ("Auburn") where he remained for the evening. Id. ¶¶ 12, 14. Ward was not provided a kosher dinner but was provided kosher cereal and milk for breakfast the next morning. Id. ¶¶ 13-14.

Ward left Auburn on the morning of March 10, 2006 and arrived at Downstate Correctional Facility ("Downstate") that evening. Id. ¶¶ 15, 17. Ward was not provided a kosher lunch on the bus from Auburn to Downstate. Id. ¶ 16. Once at Downstate, Ward was placed in the Special Housing Unit ("SHU").[4] Id. ¶ 18. Ward was not given a kosher

---

[3] Ward has "been an Israelite for [twenty] years." Ward Dep. (Docket No. 35-3) at 75.

[4] SHUs exist in all maximum and certain medium security facilities. The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ." N.Y. Comp. Codes R. & Regs. tit. 7, § 300.2(b) (1995). Inmates are

3

dinner. Id. ¶ 19. Ward spent the following three days at Downstate. Id. ¶¶ 20-27. From March 11-13, Ward "did not receive any food that he considered kosher for [breakfast,] lunch[, or dinner]." Id. The meals which Ward received were comprised of "hard, unwrapped bread [and] rotten vegetables," which Ward claimed were not nutritional. Compl., Ex. A at 2. The only food which he ate was the soup provided at night. Ward Dep. at 27. Ward arrived at Upstate on the morning of March 13, 2006. Defs. Statement ¶ 27. Ward did not receive a kosher lunch on the transit bus or kosher dinner upon arrival at Upstate. Id. ¶¶ 28, 30. On the morning of March 14, 2006, Ward received a kosher breakfast. Id. ¶ 31. [Ward] continued to receive kosher meals thereafter. Id. ¶ 32.

On March 17, 2006, Ward "filed [a] grievance . . . complaining about not receiving kosher meals during his transport from Gowanda to Upstate from March 9, 2006 to March 13, 2006." Id. ¶ 37.[5] The grievance was investigated and denied by a decision dated March 28, 2006. Id. ¶¶ 38-39. The denial stated that "[t]here is no provision[] in the NYSDOCS transpertation [sic] manual for Kosher meals to be provided to inmates on transportation buses." Compl. ¶10; see also Compl., Ex. B. The denial was appealed on April 3, 2006. Defs. Statement ¶ 40-41. Ward was transferred from Upstate on May 2, 2006. Id. ¶ 42. Defendant Woods, the Upstate Superintendent, affirmed the decision of

---

confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required. Id. at pt. 301.

[5]"he IGP [Inmate Grievance Program] is a three-step process that requires an inmate to: (1) file a grievance with the IGRC [Inmate Grievance Resolution Committee]; (2) appeal to the superintendent within four working days of receiving the IGRC's written response, and (3) appeal to the CORC [Central Office Review Committee] ... within four working days of receipt of the superintendent's written response." Abney v. McGinnis, 380 F.3d 663, 668 (2d Cir.2004) (internal citations omitted).

4

the IGRC in a decision dated May 10, 2006 and that decision was automatically appealed to CORC[6] on Ward's behalf since he had recently been transferred. Id. ¶¶ 43-44.

On June 13, 2006, CORC received the appeal and affirmed the decision on July 12, 2006. Id. ¶¶45-46.

> DOCS policy, as it existed in March 2006 required that kosher meals for inmates on approved kosher diets were to be provided by the facility from which the inmate was departing when that inmate would be in-transit at the times of the breakfast and/or lunch meals. Inmates on approved kosher diets were then to be served kosher dinners, upon request, at the facility at which they arrived. [Additionally, i]f a transport involved an overnight stay, an in-transit inmate on an approved kosher diet, upon request, was to be served a kosher breakfast prepared by the facility at which he slept
> . . . .

Id. ¶¶ 48-49. Even though Ward was deprived of his kosher lunches during transport, he saw other inmates receive such lunches. Ward Dep. at 22-23. This action followed.

## II. Discussion

In his complaint, Ward alleges that his First and Eighth Amendment rights were violated when defendants failed to provide him with kosher meals during his transport from Gowanda to Upstate. Additionally, Ward claims that his First Amendment, due process, and equal protection rights were violated by the way in which defendants handled his grievances. Defendants move for summary judgment on the grounds that (1) the Eleventh Amendment bars all claims against defendants in their official capacities, (2) there is no

---

[6] Ward claims to have filed a notice on April 17, 2006 to appeal the IGRC's denial based upon Woods' refusal to respond timely to his appeal,. Compl. ¶ 12. Ward contends that defendant Gregory, the grievance program supervisor, failed to Ward's appeal to CORC. Id. ¶ 13.

merit to Ward's First, Eighth, and Fourteenth Amendment claims, and (3) defendants are entitled to qualified immunity.

### A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude.  Triestman v. Fed. Bureau of Prisons, 470 F.3d

471, 477 (2d Cir. 2006); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, ... a court is obliged to construe his pleadings liberally.'" (citations omitted)).  However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247-48.

### B. Eleventh Amendment

Ward sues the five defendants in both their individual and official capacities.  Compl. at ¶ 4. Defendants first seek summary judgment on Ward's claims against them in their official capacities.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  "[D]espite the limited terms of the Eleventh Amendment, a federal court [cannot] entertain a suit brought by a citizen against his [or her] own State." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984) (citing Hans v. Louisiana, 134 U.S. 1, 21 (1890)).  Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. Halderman, 465 U.S. at 100.  Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states. See Quern v. Jordan, 440 U.S. 332, 340-41 (1979).

A suit against a state official in his or her official capacity is a suit against the entity that employs the official. Farid v. Smith, 850 F.2d 917, 921 (2d Cir. 1988)(citing Edelman v. Jordan, 415 U.S. 651, 663 (1974)). "Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself," rendering the latter suit for money damages barred even though asserted against the individual officer. Kentucky v. Graham, 473 U.S. 159, 166 (1985). Here, Ward seeks monetary damages against defendants in their official capacities for acts occurring within the scope of their duties with DOCS.  Thus, the Eleventh Amendment bar applies and serves to prohibit Ward's claim for monetary damages against defendants in their official capacities.

Accordingly, it is recommended that defendants' motion on this ground be granted.

### C.  Personal Involvement[7]

Defendants contend that Ward has failed to establish their personal involvement. "'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus,

---

[7] Defendants do not explicitly argue this point, although they do contend that there is no merit to Ward's constitutional claims as defendants had no involvement in the provision of Ward's meals during his transport.  Defs. Mem. of Law (Docket No. 35-7) at 2-3.  Ward has failed to name any of the corrections officers to whom he made requests for kosher meals or who were directly involved in the provision of his food during transit and at the holding facilities.  Instead, Ward's allegations concern an unenforced DOCS policy. As discussed supra, DOCS had a policy concerning kosher meals during inmate transport. Thus, any of Ward's requests for creation of a policy are moot.

supervisory officials may not be held liable merely because they held a position of authority. Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). However, supervisory personnel may be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).

### 1. Goord, LeClaire, and Eagen

Ward claims that there was a non-existent or dysfunctional DOCS policy concerning the provision of kosher meals to prisoners during transport. However, there was in fact a policy in place during Ward's transport to Upstate. Defs. Statement ¶¶ 48-49. Thus, to the extent that Ward asserts that a policy should have been created, those arguments fail.

Also, failing to "receive a response to a complaint . . . is insufficient to establish personal involvement [especially when] there is no other showing that [defendant] knew of or directly participated in any alleged violation." Abbas v. Senkowski, No. 03-CV-476 (GLS/DRH), 2005 WL 2179426, at *2 (N.D.N.Y. Sept. 9, 2005). Thus, the failure of any individual defendant to respond to Ward's grievances and letters,[8] without more, does not suffice to

---

[8] In his deposition, Ward testified that he never "had any conversations or correspondence or any kind of communication with [any defendant] . . .," as they have

9

establish that they were personally involved.

Additionally, an individual defendant cannot be held liable solely because he or she held a supervisory position over other defendants. Ward does not specifically contend that defendants were directly involved or had knowledge of the alleged constitutional violations. However, even when reading the complaint in the light most favorable to Ward, any conclusory allegations of direct involvement and knowledge would still lack any factual basis. Additionally, Ward fails even to assert a conclusory allegation, that there was any negligent supervision by any defendant, the creation of a hiring or retention policy which allowed constitutional violations to continue, or gross negligence in managing subordinates.

Accordingly, defendants' motion on this ground should be granted.

### 2. Woods

Woods also contends that he "had no personal involvement in the preparing or serving of meals to the plaintiff . . . and had no personal involvement in any decisions concerning what meals would be served to the plaintiff . . . ." However, Woods did deny Ward's grievance after concurring with the IGRC determination and was the Superintendent of Upstate at the time the alleged events occurred. Woods Decl. (Docket No. 35-5) ¶¶ 1, 7, 9.

Even if Woods did personally affirm the IGRC decision, "[t]here can be . . . no claim that [the superintendent] either created the policy [concerning religious meals during transport] or allowed it to continue as there is no allegation that he had the power to create or to terminate the policy." Hatzfield v. Goord, No. 04-CV-159, 2007 WL 700961, at *3 (N.D.N.Y.

---

either not been approached or contacted by Ward or have failed to respond to Ward's letters. Ward Dep. at 61-63.

10

Feb. 28, 2007); see also Verley v. Goord, 02-CV-1182, 2004 WL 526740, at *15-16 (S.D.N.Y. Jan. 23, 2004) (dismissing similar claims against prison superintendent based on failure to allege facts indicating personal involvement).

However, even though Woods cannot be held liable solely because he held a supervisory position over other defendants, he may be held personally responsible if he negligently supervised Upstate's corrections officers in carrying out the aforementioned policy. However, other than alleging Woods's official position, Ward fails to allege or prove any facts which would permit the conclusion that Woods was negligent, let alone grossly so, in any way or that any such negligence contributed in any way to the failure to afford kosher meals to Ward during his transport.

Accordingly, defendants' motion on this ground should be granted.

### 3. Gregory

Gregory contends that he had no personal involvement in the preparation or decision regarding what meals were served and to whom. However, Gregory did conduct the initial investigation report which denied Ward's grievance. Defs. Statement ¶¶ 38, 59-60. After completing the investigation, Gregory had no further involvement with the processing of subsequent appeals. Id. ¶ 60. Since Gregory was directly involved in authoring the original denial of Ward's grievance, and Ward claimed that his involvement "deliberately and knowingly den[ied] and violated [his] due process and equal protection . . . rights by interfering with [the] Constitutional right to redress grievances and delay [his] . . . access [to the appellate process]," Ward has alleged sufficient facts to raise an issue whether Gregory was personally involved in the alleged denial of due process.

11

Accordingly, defendants' motion on this ground should be denied.

### D. Failure to State a Claim

An action commenced pursuant to 42 U.S.C. § 1983 requires proof of the "deprivation of any right[], privilege[], or immunit[y] secured by the Constitution" or laws of the federal government. 42 U.S.C. § 1983. Thus, no action lies under § 1983 unless a plaintiff has asserted the violation of a federal right. See Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n, 453 U.S. 1, 19 (1981).

### 1. Eighth Amendment

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. CONST. amend. VIII. "It is . . . accepted that an inmate's Eighth Amendment rights may be abridged through service of food, either in insufficient quantity or which is contaminated[9], provided that through their actions prison officials create an imminent danger to the inmate's health and well-being." Harris v. Ashlaw, No. 07-CV-358 (LEK/DEP), 2007 WL 4324106, at *5 (N.D.N.Y. Dec. 5, 2007) (citing Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983). Thus, "[t]o state a cognizable claim . . . a plaintiff must allege he or she was actually harmed by food tampering." Harris, 2007 WL 4324106, at *5 (citations omitted).

---

[9] Conditions such as the service of "food [that] was spoiled, rotted and possessive of a foul smell when served . . ." may suffice to demonstrate "unsanitary conditions [to] transcend mere unpleasantness" and create a triable issue of fact. Murphy v. Wheaton, 381 F. Supp. 1252, 1261 (N.D. Ill. 1974).

There has been no "authority for the proposition that denial of [a kosher meal] in prison would rise to the level necessary to be deemed cruel and unusual under the Eighth Amendment." Wesley v. Kalos, No. 97-CV-1598 (RWS), 1997 WL 767557, at *4 (S.D.N.Y. Dec. 11, 1997); see also Perez v. Westchester County Dep't of Corr., No. 05 Civ. 8120 (RMB), 2007 WL 1288579, at *5 (S.D.N.Y. April 30, 2007). (quoting Robles, 725 F.2d at 15 (internal quotations and citations omitted)).  However, "[w]hile no court has explicitly held that denial of food is a per se violation of a prisoner's Eighth Amendment rights . . . under certain circumstances a substantial deprivation of food may well be recognized as being of constitutional dimension." Robles, 725 F.2d at 15.

In this case, Ward has failed to establish an Eighth Amendment claim based upon denial of kosher meals during his transport.  While Ward repeatedly claims that he was offered non-kosher, rotten, and stale food, he has neither proven the existence of imminent danger to his health and well-being[10] nor an actual injury.  See Ward Dep. at 28-29.  Ward also does not allege that the unnamed corrections officer that provided him with his meals were aware that the food that they were serving was allegedly inedible.  Additionally, when Ward brought the situation to an officer's attention, the officer contacted the kitchen and attempted to remedy the problem.  Id.  Thus, despite Ward's contentions that the meals were sparse and non-nutritional and viewing the facts in the light most favorable to Ward, he has not proffered sufficient facts to create a triable issue of fact as to the effect of the deprivation on his health and well-being.

---

[10] Ward makes one fleeting, conclusory reference to his health, stating that the deprivation created "physical and mental anguish and physically drain[ed his] body . . . ." Compl. ¶ 9.

13

Moreover, the service of the alleged rotten food was not at Upstate but at Downstate. Assuming that the alleged fatigue Ward suffered as a result of missing three days of meals constituted an actual injury, Ward may have offered facts sufficient to allege an Eighth Amendment violation. However, as Ward has failed to name any individual corrections officers or superintendents from Downstate where any deprivation would have occurred, he has failed to name a proper party and thus failed to state an actionable claim.

Accordingly, defendants' motion on this ground should be granted.

### 2. Fourteenth Amendment

#### a. Due Process

Ward contends that Woods and Gregory interfered with his ability to engage in the grievance process by denying and delaying his grievance.[11]

As a threshold matter, an inmate asserting a violation of his or her right to due process must establish the existence of a protected interest in life, liberty, or property. See Perry v. McDonald, 280 F.3d 159, 173 (2d Cir. 2001). "It is well-established, however, that a prison inmate has no constitutional right of access to . . . an internal grievance process." Toole v. Connell, No. 04-CV-724 (LEK/DEP), 2008 WL 4186334 at *8 (N.D.N.Y. Sept. 10, 2008) (citing Rhodes v. Hoy, No. 05-CV-836, 2007 WL 1343649, at *2 (N.D.N.Y. May 5, 2007) (holding that "[p]rison grievance procedures . . . do not confer any substantive right upon an

---

[11] To the extent that Ward's claims allege that Woods did not conduct an adequate investigation into Ward's grievance, "[t]he mere failure to investigate an allegation of unconstitutional activity, without more, . . . does not provide a basis for finding liability under section 1983." Toole v. Connell, No. 04-CV-724 (LEK/DEP), 2008 WL 4186334, at *7 (N.D.N.Y. Sept. 10, 2008) (citations omitted).

inmate requiring the procedural protections envisioned by the Fourteenth Amendment.") (internal quotations and citations omitted)); see also Shell v. Brzezniak, 365 F. Supp. 2d 362, 370 (W.D.N.Y. 2005) ("[I]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim.") (citations omitted); Cancel v. Goord, No. 00-CV-2042 (LMM), 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) ("[I]nmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983.") (citations omitted).

Whether or not a defendant denied Ward access to the grievance process, Ward may find

> redress [for] the alleged injuries he suffered as a result of his encounter with [d]efendants . . . [by] appeal[ling] the determination of the . . . hearing officer and, ultimately, . . . hav[ing] this Court review the . . . final determination [to decide] if that decision violated his constitutional rights and the prison grievance system did not satisfactorily redress the wrong about which he complain[ed]. Therefore, [Ward's] claims regarding the incident itself, i.e. [the Constitutional deprivation] against [d]efendants . . ., are properly before this Court for review.

Rhodes, 2007 WL 1343649, at *2; see also Shell, 365 F. Supp. 2d at 370 ("If prison officials ignore a grievance that raises constitutional claims, an inmate can directly petition the government for redress of that claim.") (citations omitted).

In this case, Ward cannot establish that he had a liberty interest which required constitutional protection.  However, because the underlying facts of the grievance concerned deprivations under other constitutional amendments and established constitutional grounds, the substance of ward's grievance is addressed infra.

15

Accordingly, defendants' motion for summary judgment on this ground should be granted.

### b. Equal Protection

The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under the law. Essential to that protection is the guarantee that similarly situated persons be treated equally. City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). "In order to establish an equal protection violation, the plaintiffs must show that they were treated differently than other people in similar circumstances and must establish that such unequal treatment was the result of intentional and purposeful discrimination." Myers v. Barrett, No. 95-CV-1534, 1997 WL 151770, at *3 (N.D.N.Y. Mar. 28, 1997) (Pooler, J.). "To withstand constitutional challenge, previous cases establish that classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives." Craig v. Boren, 429 U.S. 190, 197 (1976).

In this case, Ward makes at best only vague and conclusory allegations that he was treated differently than other prisoners who received religious meals during transportation. This is insufficient to show an equal protection violation. See De Jesus v. Sears Roebuck & Co., Inc., 87 F.3d 65, 70 (2d Cir. 1996). Additionally, even assuming that Ward's allegations constitute a sufficient claim, Ward cannot and has not identified any of the individuals who treated him differently nor established or alleged any facts which demonstrate that the treatment was the result of intentional and purposeful discrimination.

Accordingly, defendants' motion for summary judgment on this ground should be granted.

16

### 3. First Amendment

Ward alleges that his First Amendment right to the free exercise of his religion were violated when defendants failed to provide him with kosher meals and pursuant to DOCS policy.

"The First Amendment . . . guarantees the right to the free exercise of religion." Johnson v. Guiffere, No. 04-CV-57 (DNH), 2007 WL 3046703, at *4 (N.D.N.Y. Oct. 17, 2007) (citing Cutter v. Wilkinson, 544 U.S. 709, 719 (2005). "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." Ford v. McGinnis, 352 F.3d 582, 588 (2d Cir. 2003) (citing Pell v. Procunier, 417 U.S. 817, 822 (1974)). This right "is not absolute or unbridled, and is subject to valid penological concerns . . . ." Johnson, 2007 WL 3046703, at * 4.

The Free Exercise Clause extends "into other aspects of prison life including, pertinently, that of an inmate's diet . . . ." Id. The Second Circuit has held that it is "clearly established that a prisoner has a right to a diet consistent with his or her religious scruples . . . ." Ford, 352 F.3d at 597 (citations omitted). Therefore, to "deny prison inmates the provision of food that satisfies the dictates of their faith . . . unconstitutionally burden[s] their free exercise rights." McEachin v. McGuinnis, 357 F.3d 197, 203 (2d Cir. 2004).

> A party asserting a free exercise claim bears the initial burden of establishing that the disputed conduct infringes on his or her sincerely held religious beliefs. . . . [T]he burden then shifts to the defendant to identify a legitimate penological purpose justifying the decision . . . [and i]n the event such a[n] interest is articulated, its reasonableness is then subject to analysis under . . . Turner . . . .

Johnson, 2007 WL 3046703, at * 4-5 (citations omitted).

17

In this case, Ward has articulated a First Amendment violation as he was not provided with kosher meals during transport as directed by DOCS regulations. However, Ward was only deprived one kosher meal that Upstate was supposed to provide during his transit. The failure to provide a single meal is insufficient to allege a constitutional violation. See Peterson v. Price, No. 06-CV-106, 2007 WL 2893009, at *6 (N.D. W.Va. Sept. 28, 2007) (holding that "the failure to provide inmates with one or two kosher meals does not rise to the level of a constitutional claim."). The other denials of kosher meals occurred at Wende, Auburn, and Downstate. The majority of the denials occurred during transport to, from, and while temporarily incarcerated at Downstate. However, Ward has failed to name any individuals at Downstate who were involved, directly or indirectly, with the alleged deprivation of his meals during transport. Therefore, even though Ward has asserted a First Amendment claim, he has failed to assert it against the proper defendant.

Accordingly, defendants' motion for summary judgment should be granted on this ground.

### E. Qualified Immunity

Defendants also contend that they are entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003). However, even if the constitutional privileges "are clearly established, a

18

government actor may still be shielded by qualified immunity if it was objectively reasonable for the . . . official to believe that his [or her] acts did not violate those rights." Smith v. City of Albany, No. 03-CV-1157, 2006 WL 839525 *16 (N.D.N.Y. Mar. 27, 2006) (quoting Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights, of which a reasonable person would have known, were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230. Here, the second prong of the inquiry need not be reached because, as discussed supra, accepting all of Ward's allegations as true, he has not shown that any defendant violated his constitutional rights.

Accordingly, it is recommended in the alternative that defendants' motion on this ground be granted.

### III. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for summary judgment (Docket No. 35) be **GRANTED** as to all claims and all defendants.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE**

**REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: December 1, 2008
       Albany, New York

_____
David R. Homer
U.S. Magistrate Judge